Nov. Term,
1857.

EARNHART
v.
ROBERTSON.

Monday,
December 14.

(1) 9 Ind. R. 380.

---

## EARNHART *v.* ROBERTSON.

A defendant may answer an interrogatory demanding whether he has a receipt for money paid, without making the receipt an exhibit.

But if the receipt be made an exhibit, and there be no reply under oath, its execution stands admitted; but still it may be gainsayed for fraud or mistake.

Where there was no reply to the answer to a bill, but the parties, by consent, submitted their cause upon the pleadings and evidence as they stood, the Court will intend that the filing of a reply was waived, and that the cause stands at issue on bill and answer, as though a general replication had been filed.

Evidence admitted under such issue without objection, if consistent with the case made by the bill, may have its full weight in determining the cause.

A suit is not barred by the statute of limitations where the cause of action is concealed by the person liable thereto, until within the period limited. For certain acts amounting to a concealment, see the opinion.

An attorney in fact cannot set up, in defense of a suit against him, transactions unauthorized by his power, and not within the scope of his employment.

Nov. Term, 1857.

EARNHART
v.
ROBERTSON.

APPEAL from the *Sullivan* Circuit Court.

Monday,
December 21.

DAVISON, J.—Bill in chancery, filed *January* 15, 1851. The bill contains the following statements:

In the year 1841, *Catharine Robertson*, the plaintiff below, employed *John Earnhart*, who was the defendant, to collect a sum of money, supposed to be 900 dollars, coming to her from the estate of her father, who died in *Virginia*. She gave him a power of attorney to collect and receipt for the money; and in the year 1842, he, defendant, went to *Virginia* for the purpose of collecting it, with the express understanding that, when collected, he was to retain 100 dollars as a full compensation for his time, services and expenses, also 200 dollars which he was to apply in payment of a debt due to him from her son, *John Robertson*, and upon his return, he was to pay over the balance to the plaintiff. As her agent, he collected 682 dollars, as follows: From *Samuel Kinnerly*, *January* 13, 1842, 50 dollars; from *Jacob Kinnerly*, *February* 11, same year, 149 dollars; from *Samuel Kinnerly*, *September* 1, 1842, 83 dollars; and from same, *November* 30, same year, 400 dollars. Defendant, when he returned from *Virginia*, called on the plaintiff and told her that he had collected 300 dollars and no more. As that was the amount of money which he was to retain, she felt satisfied, though she expected a larger sum. Defendant was a preacher. Plaintiff belonged to his church, and employed him to collect her money because, on account of his religious professions, she had confidence in him. In the latter part of the year 1846, the

plaintiff, in consequence of information from *Virginia*, was induced to believe that the defendant had collected more than 300 dollars, and having inquired of him whether her belief was well founded, he again stated that he had collected 300 dollars and no more. The plaintiff, in *June*, 1847, got copies of receipts, given by the defendant for moneys collected in *Virginia* as her agent, which showed that, instead of 300 dollars, he had collected 682 dollars. And when called on and informed that such copies had been obtained, he still denied the receipt of more than 300 dollars, and up until very lately continued to make such denial. Defendant now pretends that he holds plaintiff's receipt for all the moneys claimed in this suit. He drew all the writings between them relative to the business in which he was employed. She does not remember what papers she signed. He never paid her anything; and if he holds her receipt for money paid, it is a forgery. The bill calls upon the defendant to answer various special interrogatories, and among them the following: How much money did you receive on plaintiff's claim in *Virginia?* and from whom? Have you any receipts for money paid to the plaintiff?

The defendant's answer, which is verified by his oath, denies the contract, as set forth in the complaint; says that, on the 17th of *October*, 1839, defendant sold a farm in *Washington* county, *Indiana*, to *John Robertson*, the plaintiff's son, who, with his own means, was unable to pay for it, and that *John* and his mother represented that she had money coming to her in *Virginia*, from the estate of her father, upwards of 300 dollars with interest, whereupon it was agreed between the parties that defendant should have the plaintiff's *Virginia* claim of 300 dollars, and *John's* promissory notes for 900 dollars for the farm; that he was to have all of said claim he could recover, more or less, and run the chance of making himself safe out of it. That defendant, upon his return from *Virginia*, called upon the plaintiff, who gave him the following receipt: "*January* 26, 1844. Received in full of *John Earnhart*, my attorney, the full amount coming to me from the

estate of my father, *James Kinnerly*, deceased. Attest: John *Robertson*. [Signed] *Catharine Robertson.*" Defendant denies saying that he had collected but 300 dollars; says that, upon his return from *Virginia*, he told her that he had succeeded in settling the claim—that he had, in a manner, collected the principal sum and interest, subject to deductions for costs and expenses; does not pretend that he paid anything to the plaintiff, but alleges that the receipt was executed by her voluntarily, with a full knowledge of the facts, in order to prevent all misunderstanding, and show a final settlement of the business. He admits that he gave the receipts referred to in the bill to *Jacob* and *Samuel Kinnerly;* but avers that, at the time of the institution of this suit, he had not collected 300 dollars in money, but the sum which he had got, and that which he expected to get, when added together would amount to about 425 dollars. The answer sets up the statute of limitations in bar of the suit.

There is no replication to the answer. At the *March* term, 1853, the cause, by agreement of parties, was submitted for final decree. The Court found for the plaintiff; and, over a motion for a new trial, rendered a decree in her favor for 682 dollars.

This, as we have seen, was a suit in chancery. Issues were made, and the cause submitted to the Court for trial, under the old system of procedure. And the evidence is in the record in the form of depositions. The first question raised by the defense, relates to the contract sued on. What are its stipulations? The bill says that the defendant, when he collected the money, was to retain 300 dollars, and, upon his return from *Virginia*, pay over the balance to the plaintiff. This averment the answer denies, and such denial, being responsive to the bill, is evidence in the case. Three witnesses, *Mallet*, *Robertson* and *Boyle*, each fully sustain the alleged contract, and two of them, *Robertson* and *Boyle*, testify that they were called on by the parties to witness it. On the other hand, *Elisha* and *Caroline Earnhart*, the defendant's son and daughter, testified to various conversations of the plaintiff, in which,

Nov. Term, 1857.

EARNHART
v.
ROBERTSON.

they say, she admitted that the defendant "was to have all of the *Virginia* claim he could recover, and run his chance of making himself safe out of it." We have, however, carefully examined the depositions, and are of opinion that the evidence, giving due force to the answer, sufficiently proves the contract stated in the bill.

But it is insisted that the receipt set up in the answer is a conclusive defense; that the defendant was called upon to produce it, and having produced it, the same not being denied under the plaintiff's oath, stands admitted and cannot be gainsayed. This conclusion is not strictly correct. The defendant was not called upon to produce the receipt, but was simply interrogated whether he had any receipts for money paid by him to the plaintiff. It was obviously competent for the defendant, had he chosen to do so, to have answered the interrogatory without making the receipt an exhibit in defense of the suit. Its execution, however, does stand admitted. The defendant was not bound to prove that the plaintiff signed it, because there was no reply verified by oath denying her signature. Still there is no reason why the receipt cannot be gainsayed. For instance, it might be avoided on the ground of fraud or mistake, though not denied under oath. It appeared in evidence that the receipt in question was written by the defendant, who, at the plaintiff's request, signed her name, and that *John Robertson*, who is a witness in the cause, attested its execution. The testimony of *Robertson* shows conclusively that when she gave the receipt she was insane, and incapable of transacting any business. But such evidence, it is said, should not have been allowed any consideration in the decision of the case, because there is no issue to which it was applicable. It is true, there was no reply to the answer. Still the parties, by consent, submitted their case upon the pleadings and evidence, as they then stood. Hence, we must intend that the filing of a reply was waived by the defendant. *Demaree* v. *Driskill*, 3 Blackf. 115. The case, therefore, stands at issue on bill and answer, as if a general replication had been filed. R. S. 1843, p. 837, § 30. And under such replication, it

seems to us, it was competent for the plaintiff to show that she was insane when she gave the receipt. At all
events, the evidence was admitted under issues made by
the parties, without objection—was not inconsistent with
the case made by the bill—and we are not, therefore, in-
clined to hold that the Court erred, in giving it the effect
· of legitimate proof.

The next question to settle is, was the suit barred by
the statute of limitations? It is conceded that the defend-
ant returned from *Virginia* on the 26th of *January*, 1844,
and that previously he had given receipts for 682 dollars,
the entire amount to which the plaintiff was entitled from
the estate of her father. The evidence, we have seen,
shows that under his contract he was bound, after retain-
ing 300 dollars out of the amount for which the receipts
were given, to pay over, when he returned, the balance, to
the plaintiff. But he failed to make such payment; and
the result seems to be that, for his default, an action in her
favor accrued at the date of his return. And as the pre-
sent suit was not commenced until the 15th of *January*,
1851, the defense must be sustained, unless the statute it-
self contains an exception applicable to the case made by
the record, which takes it out of the general statutory rule.
We are referred to section 113 of that statute, which says:
"If any person liable to any of the actions mentioned in
this article, shall conceal the cause of such action against
him from the knowledge of the person entitled thereto, the
action may be commenced at any time within the period
limited therefor, commencing from the time the person en-
titled to bring the same shall discover that he has such
cause of action," &c. R. S. 1843, p. 688. Did the defend-
ant, in this instance, conceal the cause of action? And if
so, was the plaintiff unadvised of her right to sue until
within the period of six years next before she instituted
her suit? The bill charges that the defendant, when he
returned from *Virginia*, and at various times thereafter up
until shortly before the suit was commenced, told the plain-
tiff that he had collected 300 dollars and no more. This
charge the answer denies. What, then, are the proofs?

Nov. Term,
1857.

EARNHART
v.
ROBERTSON.

*Robertson*, a witness, testified that he was the agent of the plaintiff, who was his mother; that defendant, upon his return from *Virginia*, told witness that he had collected only 300 dollars; that he also made a similar statement to plaintiff at the time she gave the receipt, as before stated; that she belonged to the same church in which he was a preacher, and had great confidence in him.. *Robertson* further stated that plaintiff, when defendant returned, was incapable, on account of mental derangement, of transacting any business; that she was insane for the space of two or three years, and became sane in the spring of 1845, and in that year, or the year 1846, got a letter from her brother, stating the amount defendant had collected. This, in our opinion, shows an intentional concealment within the meaning of the statute, and admits the decisive inference that plaintiff did not discover her cause of action until the spring of 1845. It follows, in view of *Robertson's* testimony, that the statute did not commence to run until the latter period, and that the suit is not barred, because, as we have seen, it was instituted on the 15th of *Jannary*, 1851.

*Boyle*, another witness, testified that on defendant's return from *Virginia*, he asked him how much he had collected for plaintiff, but he did not seem disposed to tell the amount. He stated that he got enough to make him safe, and he was satisfied. This evidence, though it does not amount to a representation, or prove a concealment from the plaintiff, tends to show an intent to conceal his liability on the contract, and, being unexplained, must be regarded a circumstance corroborating the direct testimony of *Robertson*. Indeed, the very fact that defendant set up in his defense a claim to all the money which he had collected, when by the contract he was only entitled to 300 dollars, conduces to prove that at the time he evaded *Boyle's* inquiry he had conceived the design of concealing the plaintiff's cause of action. We are of opinion that the defense of the statute of limitations is not sustained by the evidence.

But it is insisted that the decree is for an amount unau-

thorized by the proofs. The answer, though it admits that defendant, as agent, gave receipts for 682 dollars, as stated in the bill, alleges that a portion of the amount for which they were given was paid to him in promissory notes, in articles of personal property, and in claims against the plaintiff; and that in settling the business, he had expended a large sum in attorney's fees and costs, so that, at the commencement of this suit, he had not realized, in money, more than 300 dollars. The admission of the receipts is responsive to the bill, and, therefore, evidence in the case; but the answer, so far as it avers payments to the defendant otherwise than in money, and the expenditure for attorney's fees, &c., should have been, but is not, sustained by proof. Suppose, however, that the answer, in that respect, be taken as true, still the defendant was employed to collect money, and not authorized to receive in payment anything but money. For his services and expenses in making such collection, he was to receive 100 dollars, and no more; and he cannot be allowed to set up in defense of the suit, transactions unauthorized by his engagement and not within the scope of his employment. The 682 dollars stated in the receipts, must be considered a proper estimate of the amount which the defendant was employed to collect, out of which, in accordance with the contract, he was authorized to retain 300 dollars. The balance, 382 dollars, with the addition of interest from the date of his return from *Virginia*, makes the decree. We think the amount due the plaintiff was correctly estimated.

*Per Curiam.*—The decree is affirmed, with 5 per cent. damages and costs.

*J. P. Usher*, for the appellant.