No. 13,826.

## FISHER v. TULLER.

STATUTE OF LIMITATIONS.—*Partnership.*—*Money Received.*—*Fraudulent Concealment.*—*Decedent's Estate.*—*Debt of Ancestor.*—*Liability of Heirs.*—The plaintiff Fisher, and Owen Tuller, as partners, carried the U. S. mails in Missouri, under a contract with the Government. Property of the partnership having been captured and destroyed by confederate soldiers during the Rebellion, in 1866, the prosecution of the claim for the money was entrusted to Tuller, who received from the Government, in 1867, in payment of the claim, twenty thousand dollars, and appropriated it to his own use, concealing from Fisher the fact of its receipt. After the dissolution of the partnership, in 1866, Tuller informed Fisher that the claim had been disallowed, and finally disposed of. Fisher, relying upon the statements of Tuller, remained in ignorance of the facts until 1884. Tuller having died in 1873, his estate was finally settled in 1879. Fisher has been a non-resident since 1860. An action was brought against one of the heirs in 1886.

*Held,* that the facts stated, while sufficient to avoid the bar of the statute of limitations if the case were between Tuller, or his administrator, and the

plaintiff, there can be no recovery against the heir, the action against him, which is statutory, being barred by the proviso of section 2442, R. S. 1881, relating to the liability of heirs, which requires the action to be brought within two years.

DECEDENTS' ESTATES.—*Ancestor's Debt.—Heir.—Common-Law Liability.*— By the common law the heir is not liable for the debts of the ancestor.

From the Vigo Circuit Court.

*G. W. Faris, S. R. Hamill, T. H. Nelson* and *I. N. Pierce,* for appellant.

*C. F. McNutt, J. G. McNutt,* and *I. H. C. Royse,* for appellee.

ELLIOTT, J.—The appellant and Owen Tuller were partners, and as partners carried the United States mails in Missouri, under a contract with the Government. During the war of the Rebellion, confederate soldiers captured and destroyed property of the partnership to the value of twenty-five thousand dollars. In the year 1866, the firm filed a claim for the value of the property, and the prosecution of the claim was entrusted to Tuller. He received from the Government in payment of the claim, in the year 1867, twenty thousand dollars, which he appropriated to his own use. He concealed from Fisher the fact that he had received the money. After the dissolution of the partnership, which occurred in 1866, Tuller informed Fisher that the claim had not been paid and that it had been disallowed, and finally disposed of by the Government. Fisher relied upon the statements of Tuller and was wholly ignorant of the fact that Tuller had received and appropriated the money due the partnership, nor did he obtain knowledge of the fact until September, 1884. Fisher has been a resident of another State since the year 1860. Tuller died in 1873, leaving as his only heirs his widow, Janet C. Tuller, George M. Tuller, Owen Tuller and Emma J. Tuller. Tuller died the owner of real and personal property of the value of one hundred and fifty thousand dollars; his estate was administered upon, and in 1879 was fully settled. The property re-

maining after settlement was distributed to the heirs and ten thousand dollars was received by the appellee, George M. Tuller, from the personal estate of his father, and he also received land to the value of fifty thousand dollars, which was set off to him by an order of partition. He is still the owner of the land thus acquired from the estate of Owen Tuller. All of the heirs of Owen Tuller are non-residents of this State except the appellee.

The facts stated in the complaint would avoid the bar of the statute of limitations if the case were one between Owen Tuller, or his administrator, and the appellant, for they are sufficient to establish a fraudulent concealment by Owen Tuller of the cause of action. The relation which existed between Tuller and Fisher, his partner, was one of trust and confidence, and the latter had a right to rely upon the statements of the former. Partners are not strangers dealing at arms-length in matters connected with the partnership business, for the relation requires that each shall deal with the other in the utmost good faith. It would be impossible to conduct a partnership business unless the members of the partnership were held bound to exercise in all their dealings with each other the strictest good faith, and this requires that there should be neither intentional concealment nor intentional misrepresentation. In this instance there was a flagrant breach of duty, for there was not only fraudulent concealment but a positive false representation.

It is true that the partnership had been dissolved before Tuller received the money, but it is also true that he still occupied a fiduciary relation to the appellant. He was entrusted with the prosecution of a claim due the partnership, and was bound to act in good faith toward his former partner, who had reposed confidence in him. As to the collection and disposition of the proceeds of the claim entrusted to him he was in every essential particular in substantially the same position that he would have occupied had the partner-

ship not been dissolved. He was acting for the partnership by virtue of his interest in the firm, and under the trust and confidence reposed in him by his associate. This trust he had no right to abuse or betray.

The peculiar relations existing between the parties warranted Fisher in relying upon the statements of his associate. Even where no fiduciary relations exist a party may rely upon the statements of another as to matters of record. *Campbell* v. *Frankem*, 65 Ind. 591; *Dodge* v. *Pope*, 93 Ind. 480; *West* v. *Wright*, 98 Ind. 335; *Bristol* v. *Braidwood*, 28 Mich. 191.

The money received by Tuller from the United States was received by him as trust funds of the partnership. As a partner he had a right to collect the money, but when he did collect it he became chargeable as a trustee. Occupying, as he did, the position of a trustee, with trust funds in his hands, he was bound to act in the utmost good faith towards the beneficiary of the trust, or else be held guilty of fraud. Any departure from duty made him liable, and any fraudulent concealment, or false statement, would have precluded him, had he been living, from availing himself of the defence of the statute of limitations. Speaking of the rule upon the subject, the Supreme Court of the United States said: "In general, length of time is no bar to a trust clearly established to have once existed; and where fraud is imputed and proved length of time ought not to exclude relief." *Michoud* v. *Girod*, 4 How. (U. S.) 503. The rule thus stated was originated by the courts of equity, and it is often asserted to defeat the bar of the statute of limitations. *Booth* v. *Earl of Warrington*, 1 Brown's P. C. 445; *Hovenden* v. *Lord Annesley* 2 Sch. & Lef. 607 (634); *Sherwood* v. *Sutton*, 5 Mason, 143; *First Massachusetts, etc., Co.* v. *Field*, 3 Mass. 201; *Bishop* v. *Little*, 3 Greenl. 405; *Phalen* v. *Clark*, 19 Conn. 420.

But in this jurisdiction the case is stronger, for our statute provides that if a cause of action shall be concealed, the action may be commenced at any time, within the period of

limitation, after the discovery of the cause of action.   It is true that mere silence is not a concealment within the meaning of the statute.   *Wynne* v. *Cornelison,* 52 Ind. 312; *Jackson* v. *Buchanan,* 59 Ind. 390; *Ware* v. *State, ex rel.,* 74 Ind. 181. But here there was a positive representation made by a party whose position required of him the utmost good faith, and that misrepresentation was a concealment of the cause of action. Whatever may be the rule where no relation of trust and confidence exists, we are clear that where the relation does exist, as in this case, the bar of the statute can not avail the party who misleads his partner by representing that a claim can not be collected when he has, in fact, collected it and appropriated the avails to his own use.   The conclusion we have stated is within the rule established by our own cases. *Earnhart* v. *Robertson,* 10 Ind. 8; *Boyd* v. *Boyd,* 27 Ind. 429; *Bescher* v. *Paulus,* 58 Ind. 271; *Pate* v. *Tait,* 72 Ind. 450.   We entertain no doubt that Owen Tuller's fraudulent acts checked the operation of the statute as to him, and that if he were living and were the action prosecuted against him we should without hesitation rule in favor of the appellant.

The point made by appellee that there was no such concealment as would bar Owen Tuller, if living, having been disposed of, the only remaining question requiring consideration is whether the appellee is answerable as one of his heirs.

The right of the appellant to prosecute an action against the appellee is statutory.   The statute which gives the right reads thus : " The heirs, devisees, and distributees of a decedent shall be liable, to the extent of the property received by them from the decedent's estate, to any creditor whose claim remains unpaid, who, six months prior to such final settlement was insane, an infant, or out of the State ; but such suit must be brought within one year after the disability is removed : *Provided,* That suit upon the claim of any creditor out of the State must be brought within two years after such final settlement."   R. S. 1881, section 2442.   We can see no

escape from the plain language of this statute. The claimant is not a resident of this State, the estate of the decedent was finally settled in 1879, and this action was not brought until 1886. The statute which gives the right contains its own limitations, and we can engraft no exceptions upon it. The language is clear and sweeping, and no exceptions are created; nothing remains for the courts but to apply the law as it is written.

If there were a common-law right to hold the heir liable for the debts of an ancestor, there might be some plausibility in appellant's argument, but there is no such common-law right. American Law of Administration, section 574. The appellant must, therefore, take the statutory right as it is bestowed, for he has no other.

Under the authorities it is quite doubtful whether one heir can be sued where there are several, but we do not pass upon this question.

Judgment affirmed.

Filed Jan. 30, 1890.