HERMAN J. SELLE, APPELLANT, v. ROBERT WRIGLEY, RESPONDENT.— 116 S. W. (2d) 217.

Kansas City Court of Appeals. May 2, 1938.

44

McCollum & Ewald and Grover C. Sparks for appellant.

Breit & Roberts for respondent.

REYNOLDS, J.—This appeal comes to us from the Circuit Court of Andrew County. The action is for damages based upon fraud and deceit, in which the plaintiff alleges and claims that he was induced to remain with and perform services for the defendant because of certain fraudulent promises and fraudulent representations to the effect that the plaintiff had been adopted by the defendant as his son.

The plaintiff filed his original petition in the circuit court of Andrew county on October 24, 1935, and thereafter, on November 18, 1936, filed his amended petition, to which latter the defendant filed a demurrer based upon the grounds that it failed to state sufficient facts to constitute a cause of action and that, upon its face, it showed that the plaintiff's cause of action, if any, had been barred by the Statue of Limitations, which was sustained by the trial court on the ground that the action was barred by the Statute of Limitations.

The demurrer admits all of the facts well pleaded, alleged in the

plaintiff's amended petition, which are substantially as follows: That the plaintiff was a ward of The Children's Aid Society of New York City; that, on January 8, 1909, and shortly after the plaintiff had arrived at the age of fourteen years, he was placed by said society in the home of Margaret Wrigley in Andrew county, Missouri, under a contract whereby said Margaret Wrigley agreed to keep and provide for the plaintiff until he became eighteen years of age; that he became eighteen years of age on December 22, 1912; that Margaret Wrigley was a sister of the defendant, Robert Wrigley; that neither Margaret nor Robert was ever married; that they resided together as one family upon a dairy, farm in Andrew county; that the defendant assumed and took control of the plaintiff from the time he was first placed in the Wrigley home and the plaintiff worked regularly for the defendant, doing whatever work was assigned him; that shortly prior to the plaintiff's eighteenth birthday and in November or December, 1912, the defendant induced the plaintiff to continue working on the farm after he was eighteen years of age by promising the plaintiff a team and wagon and a little later induced the plaintiff to continue working on the farm until he became twenty-one years of age by promising him $1000 at that time, to enable him to start farming on his own account; that, shortly prior to his twenty-first birthday and about November, 1915, the defendant informed the plaintiff that the defendant and his sister, Margaret Wrigley, had adopted the plaintiff as their son and stated that he was to be an heir at law of the defendant and his said sister and, in that way, would be legally protected and assured of compensation for his labors on the farm and that the plaintiff was to manage the farm and have an interest in the dairy herd; that the plaintiff relied upon such statements and promises and continued to work upon said farm for the defendant without pay until about July 15, 1917, when certain difficulties arose between them and the defendant discharged the plaintiff; that, thereafter and under date of November 26, 1917, the plaintiff demanded pay from the defendant for labor rendered by the plaintiff to the defendant between the time of his eighteenth birthday and July 15, 1917; that, under date of December 9, 1917, the defendant wrote the plaintiff a letter (which is pleaded *in haec verba* in the petition), stating that the plaintiff was the legally adopted son of the defendant and that he had investigated the laws of Missouri and had ascertained that the plaintiff could not recover for his services because of said adoption and that, while divorce laws separate husband and wife, there was no procedure by which the relationship of father and son could be dissolved, and signed said letter, "Your Father by Adoption, Robert G. Wrigley;" that the defendant had not adopted the plaintiff as his son but that said letter was written and the representations concerning an adoption were made for the

purpose of misleading and deceiving the plaintiff and inducing him to believe that he was not entitled to compensation because of the alleged adoption and for the purpose of preventing him from making inquiry as to his legal rights and to induce him to drop his demand; that said alleged adoption was a well laid and cunningly conceived design, plan, and scheme to deceive the plaintiff and obtain his services without compensating him therefor; that, as a part of and in furtherance of said plan and scheme, the defendant, after the death of his sister (Margaret Wrigley), caused the name of the plaintiff to be listed as an heir of the said Margaret Wrigley and caused the administrator of her estate to include the plaintiff's name as an heir in certain publication notices in connection with administration proceedings upon her estate, when in truth and fact the plaintiff was no such heir and the defendant had full knowledge thereof, and the plaintiff received nothing from said estate; that the plaintiff believed the statements and representations made by the defendant relative to said adoption and relied and acted thereon; that he did not discover that such statements were false and untrue until within ninety days prior to the filing of this suit, when he was informed by third parties that the defendant had stated that the plaintiff was not an adopted son; that, thereupon, the plaintiff caused an investigation to be made and, for the first time, learned that he had not been adopted by the defendant; that, because of the said fraud, deceit, and misrepresentations, the plaintiff has been damaged in the sum of $1080, being the value of his said services at the rate of $20 per month for the fifty-four months the plaintiff worked for the defendant after he attained the age of eighteen years; and that said sum should bear interest at the rate of six per cent. from July 15, 1917, for which judgment is prayed.

### OPINION.

1. The sole and only question on this appeal relates to whether or not the demurrer was properly sustained; and this is made to depend upon whether or not the amended petition shows upon its face that the plaintiff's cause of action is barred by Section 862, Revised Statutes of 1929, which, so far as pertinent here, is as follows: "What within five years. Within five years: . . . fifth, an action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud."

In determining whether the demurrer was properly ruled and sustained by the trial court, all of the facts well pleaded in the amended petition are to be taken and considered as true.

An analysis of the amended petition shows that the action is one for fraud and deceit, whereby the plaintiff seeks to recover for the

reasonable value of services performed by him for the defendant in remaining with the defendant and working and laboring for him upon his farm for a period of about four and one-half years, from the time that the plaintiff became eighteen years of age to July 15, 1917, which services are alleged to have been induced by the defendant through false and fraudulent promises and representations made by him to the plaintiff—upon which the plaintiff relied as true—touching the adoption of the plaintiff by the defendant as his son and heir and that, by reason of such adoption, he would be fully compensated for remaining with the defendant after his eighteenth birthday and working for him upon his farm by the property he would receive from the defendant's estate as such adopted son and heir. The amended petition alleges facts sufficient to show the existence of a confidential and fiduciary relationship between the plaintiff and the defendant during the time that such services were performed and the statements complained of made.

The original petition was filed on October 24, 1935, more than seventeen years (as disclosed on the face thereof) after the rendition of the services the value of which is sought to be recovered and more than seventeen years after a demand by the plaintiff for the payment for such services and more than seventeen years after the refusal of the defendant to pay for the same and more than seventeen years after the commission of the alleged fraudulent acts complained of.

In the amended petition, it is alleged that the plaintiff did not discover that the representations made to him by the defendant touching his adoption by him were false and untrue and did not discover the fraud practiced upon him by the making of such representations until within ninety days before the original petition herein was filed.

2. The plaintiff contends that, upon the facts alleged in the amended petition, a confidential and fiduciary relationship existed between him and the defendant at the time that such representations were made to him touching his adoption and at the time that his services that were induced thereby were performed and at the time that such fraud was practiced upon him and that, by reason of such relationship, the plaintiff's cause of action did not accrue until the actual discovery of the untruthfulness of such statements and of the fraud practiced upon him, which, as above stated, was alleged in the amended petition not to have been until within ninety days prior to the filing of the original petition, and that his cause of action is not barred by the limitations provided in the fifth clause of the section above quoted—in other words, as we understand it, that, by reason of the facts alleged and pleaded and of the confidential relationship existing, the limitations provided by said fifth clause never became operative as against his claim until his actual discovery of the fraud but that he had five years within which to file his suit based upon

such fraud after the actual discovery thereof and that, having filed his original petition within five years after his actual discovery of the fraud, his action is not barred by the provisions of said subdivision of said section, regardless of the time when said fraud was actually committed and his services actually rendered.

Upon the other hand, the defendant contends that the plaintiff's action, being one for fraud, falls within the provisions of the fifth subdivision of said section and is barred by the limitations provided therein, in that it was not brought until over seventeen years after the commission of the fraud and the performance of said services, regardless of the fact that a confidential and fiduciary relationship existed and is involved.

3. The amended petition states a good cause of action for fraud and deceit unless it shows upon its face that such cause of action is barred by said fifth clause of said Section 862. In our opinion, it does not so show.

4. The defendant, by his demurrer, admits the facts upon which the plaintiff's claim of the existence of a confidential and fiduciary relationship between him and the defendant is based. He admits the circumstances under which the plaintiff came into his home and admits that the plaintiff was a ward of The Children's Aid Society of New York and was, at the age of fourteen years, placed by said society in the home of Margaret Wrigley, a sister of the defendant, under a contract with her to keep and provide for the plaintiff until he was eighteen years of age; that Margaret Wrigley, the sister, lived with the defendant in his home on his farm and she and the defendant made their home together and lived as one family; that neither of them was married; that she was his housekeeper; that he was engaged in operating the farm of some two hundred acres upon which they lived and of which he was the owner and conducted a dairy farm thereon; that the defendant immediately assumed control of the plaintiff when he was brought into the home and assigned to him various and sundry work and labor on the farm, which the plaintiff regularly performed until he was eighteen years of age; that he induced the plaintiff to remain with him on said farm after the plaintiff reached the age of eighteen years and to continue to work and labor for him until his twenty-first birthday by reason of promises made to him to give him one thousand dollars and a team and wagon upon reaching his twenty-first birthday; that, shortly prior to his twenty-first birthday, he made the representation to the plaintiff concerning the plaintiff's adoption by him as his son and heir and induced him thereby to remain with him and to continue to work and labor for him on said farm until July 15, 1917, without compensa-
was through with him and he could go. He admits that the plaintiff
tion, when he discharged the plaintiff with the statement that he
has never been compensated or paid for such services. He admits

that a demand was made upon him by the plaintiff by letter, soon after his discharge, for the value of his work and labor, to which he, on December 9, 1917, by letter signed "Your Father by Adoption, Robert G. Wrigley," replied to the plaintiff, in which he again represented to and assured the plaintiff that he had been adopted by him as his son and heir and further assured him that such adoption was for his protection and that, by reason of the relationship existing through such adoption, the plaintiff could not recover upon such demand under the laws of Missouri, which he had investigated, and had no foundation upon which to base a demand for compensation and that he knew of no procedure to be pursued by him or the plaintiff by which such relationship could be undone and refused to comply with such demand and admits further that such representations and assurances were made by him with the intention that the plaintiff should rely upon the same as true and for the purpose of fraudulently concealing from the plaintiff the fact that he was not his adopted son and of causing him to believe that he was not entitled to and could not recover upon such demand in order to cause him to abandon and drop it without further inquiry. He admits that the plaintiff did rely on such representations and assurances as true and that, by reason of such reliance upon the same and his belief in the same, did abandon said claim and thereafter continued in reliance upon and belief in the same without any knowledge that they were not true and that they were false until within ninety days of the filing of the original petition in this suit. He admits that all of such representations and assurances so made by him to the plaintiff touching his adoption of him as his son whenever made were false and untrue and were made by him from the beginning in the execution of a design, plan, and scheme on his part to deceive and defraud the plaintiff and to obtain his work and labor for his own personal gain without any intention on his part that the plaintiff should ever be compensated therefor. He admits that the letter of December 9, 1917, was written with full knowledge on his part of its falsity.

5. The admitted facts above noted, together with the facts alleged in the amended petition to show a confidential and fiduciary relationship at all times between the plaintiff and the defendant, bring this case, so far as the application of the Statute of Limitations and its avoidance are concerned, within the rules announced and the principles applied by the Supreme Court in the case of McLain v. Parker, 229 Mo. 68, 129 S. W. 500, the opinion in which was written by Judge GRAVES, and other cases in harmony therewith.

6. A confidential relationship may be said to exist where two persons stand in such a relation as that, while it continues, confidence is necessarily reposed by one and the influence which naturally grows out of that confidence is possessed by the other. [Martin v. Baker, 135 Mo. 495, 36 S. W. 369.] The principle is thus stated in 27 Amer-

ican and English Encyclopædia of Law, 460, 461: "The origin of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations that exist whenever one trusts in and relies upon another. The only question is, does such a relation in fact exist?"

In Studybaker v. Cofield, 159 Mo. 596, 61 S. W. 246, l. c. 250, it is said: "The law is as cautious in defining a fiduciary relation in the sense in which we are now using that term as it is in limiting by definition the boundaries within which fraud may be pursued. There are certain technical relations that are readily comprehended as fiduciary, such as guardian and ward, attorney and client, priest and communicant, etc.; but there are other relations not falling in either of those specified classes that are in fact fiduciary, and, conversely, it is not every guardian, attorney, or priest, *quia eo nomine*, who is to be adjudged to hold a fiduciary relation with the party in regard to a particular subject. It is in each case a question of fact. The law regards the real, rather than the nominal, condition."

It may therefore be said that a confidential relation exists between two persons, whether their relations be such as are technically fiduciary or merely informal, whenever one trusts in and relies on the other. The question in such case is always whether or not trust is reposed.

That the facts alleged in the amended petition and admitted by the defendant by his demurrer touching the relations between the plaintiff and the defendant were sufficient to and did show a confidential and fiduciary relation existing between them cannot be doubted.

The admitted facts in this case touching the relations between the plaintiff and the defendant show that the plaintiff, a mere orphan, the ward of an orphan society, came into the home of the defendant at the early age of fourteen years and that the defendant at once assumed authority over him and set himself up as the plaintiff's friend, adviser, and protector, assuming the place of a parent to him. He put him to work and directed his movements from day to day. By his attitude, his conduct, and his authority exercised, he readily obtained an influence over the plaintiff and naturally led him to repose confidence and trust in him.

7. The case of McLain v. Parker, *supra*, was one involving confidential relations between the parties. The plaintiff was a farmer and the defendant an attorney and a real estate and loan agent. The action was one for fraud and deceit, based on eight different transactions, set forth in eight separate counts of the petition, covering a period of years, in which the plaintiff sought to recover certain distinct sums of money paid by him upon certain false representations, in each instance alleged to have been made by the defendant to him and relied upon by him by reason of his trust and confidence in

the defendant, growing out of their long friendship, their church relationships, their relationship as attorney and client, and their association in various other business transactions.

The first false representations made, upon which the fraud complained of was charged in the petition, set out in the first count, were alleged to have been made in May, 1893; and it was charged in connection with such representations that the plaintiff did not discover the fraud perpetrated thereby until August, 1903, by reason of the concealment of the facts thereof from him by the defendant through his continued reaffirmance as true of the representations upon which said fraud was based, by which the plaintiff was prevented from making any discovery thereof. It thus appears that the discovery of the fraud was not within the ten-year period for such discovery limited by section 862, *supra*.

The second fraud complained of, set out in the second count of the petition, was charged to have occurred in the year 1893 in a matter in which the defendant was the plaintiff's agent.

The act of fraud complained of in the third count of the petition was one which was alleged to have occurred in the year 1899, as likewise was the act of fraud complained of in the fourth count. In each of said counts (2, 3, and 4), as in the first, it was alleged that the plaintiff did not discover the actual fraud committed until some years after its commission by reason of the defendant's concealment of the facts of such fraud in each instance, through his continued assurances that the representations upon which such frauds were based were true.

The acts of fraud complained of and the circumstances thereof set out in the 5, 6, 7, and 8 counts of the petition in that case are not set out in detail in the opinion in that case; but it is stated in the opinion that, in all of the transactions in each of said counts, upon which the alleged fraud was based, the same general plan was pursued by the defendant as in the transactions in the 1, 3, and 4 counts complained of and in each the same confidential relationship between the parties was involved.

It does not appear from the opinion in that case upon what date the suit was instituted or the petition filed; but it does appear therefrom that the petition was filed within two years after the discovery by the plaintiff of the fraud complained of in the first count, which was in August, 1903.

The defendant in that case interposed the plea of the Statute of Limitations to the petition and the various counts thereof. In that case, the trial court made a finding of facts, in which, among other things, in addition to the fraud charged in each count, it found the existence of a confidential relationship at the time the frauds were committed.

In answering the defendant's plea of the Statute of Limitations to the first count of the petition, Judge GRAVES, who wrote the opinion in that case, said (l. c. 82 of 229 Mo. and 503 of 129 S. W.): "Nor is there substance in the plea of the Statute of Limitations. When this whole record is considered, there is ample evidence therein to justify the finding of facts, made by the chancellor below, which takes the case out of the Statute of Limitations. The judgment of this count is affirmed."

Further on, under the sixth paragraph of the opinion in that case (l. c. 90 of 229 Mo. and 506 of 129 S. W.), the learned judge who wrote the opinion again took up the defendant's plea of the Statute of Limitations, to the various counts of the petition and to the petition as a whole, and said: "It is earnestly insisted that the Statute of Limitations has run upon these claims. This would be true as to at least some of them, but for things disclosed in the record. As stated elsewhere, it is important to consider the whole case together, in order to determine the plan and scheme of defendant's operations. When that is done, it is as clear as a noonday's sun. . . . From this record it appears conclusively that defendant's idea was to cultivate an intimate relationship between himself and the plaintiff, and to use such relationship to his own advancement. Men of means can be induced to enter into business ventures with friends, and this the defendant seems to have fully appreciated. In each instance, save the one, the plaintiff was approached in the spirit of friendship, and a gentle hint given that big money was in sight in a certain deal, and out of friendship plaintiff would be taken in on the deal. . . . The circumstances detailed in this evidence would strongly tend to show that the real character of these deals was hidden from the plaintiff until a short time before this action was begun. Not only so, but they were purposely and studiously concealed by defendant. Numerous letters in evidence would lend light as to why the continued confidence was held by plaintiff practically up to the end. One cannot purposely hide his fraud and deception for years, and thus plead the Statute of Limitations. Nor can one purposely act (as the record would strongly tend to indicate in this case) so as to allay the suspicions of his opponent, and then say that he ought to have been more diligent in discovering the fraud. The facts in evidence are such as to obviate the running of the statute. In matters of fraud and deceit, the statute does not begin to run until such time as the fraud is discovered."

Again, upon the motion for rehearing in that case, it was said in the opinion given thereon (l. c. 95 and 96 of 229 Mo. and 507 and 508 of 129 S. W.): "It is argued in the motion that we have overlooked those cases applicable to the Statute of Limitations, which in effect hold that one must exercise due diligence in discovering the

fraud, and if he do not so do the statute runs as against his cause of action. We have no fault to find with these cases nor the doctrine which they announce. The doctrine is sound and the cases in principle right, but the facts do not apply here. In the case at bar a fiduciary relation is shown. Not only so, but the entire record is such as to indicate that for all these years there was a studied effort on the part of the defendant to keep the plaintiff in a state of mind which would disarm him of suspicion, and prevent an investigation of the facts. The evidence indicates that for years the defendant was diligent in his effort to disarm the plaintiff of suspicion, and thereby preclude an investigation. Had the first deal stopped with the fraud therein, committed, the doctrine of the cases relied upon by the defendant would have been applicable. But such was not the case. We tried to make it clear in the first opinion that there was a studied effort ever afterwards to disarm the plaintiff of suspicion, and thus preclude an investigation. We so indicated when in the original opinion we said all the transactions between the parties must be considered together. From the whole relationship appears the studied effort to disarm the plaintiff of any suspicion of fraud. One cannot perpetrate a fraud and then for years thereafter use fraudulent means and methods to ally suspicion, and then be in the attitude of claiming that the Statute of Limitations has run. To so hold would be to give such a party the advantage of his own wrong. By his own wrong, we do not mean the original wrong of the original fraud and deceit, but the subsequent wrong and further fraud and deceit in this allying the suspicions of the party for the purpose of preventing investigation. The record in this case shows a fraudulent scheme which was carried on for some years, each act therein being calculated to obviate an investigation of previous acts. One who wrongs another by fraud and deceit, and then further wrongs him by a later fraud and deceit, intended and calculated to disarm the party of suspicion, and to prevent an investigation is in no position to charge negligence or laches in not sooner making investigation.''

8. The McLain Case, *supra,* covers this case like a blanket.

In this case, not only is the original fraud alleged to have been practiced upon the plaintiff by the defendant in fraudulently representing to the plaintiff that he had been adopted as his son and heir—through which he procured the services of the plaintiff without compensation—admitted; but also the further fraud practiced by him on the plaintiff after such services had been procured and after the plaintiff had been discharged by him and after the plaintiff had made demand for compensation for such services, in concealing from the plaintiff by his letter of December 9, 1917, the original fraud practiced and in falsely reassuring the plaintiff through such letter that the plaintiff had been adopted and such adoption was for his

protection and the relationship of father and son created thereby could never under the law be undone, by which the plaintiff was induced to continue to rely upon the representations that he was his adopted son as true and was induced to believe that he was not entitled to and could not recover compensation for his services by reason of such relationship under the law (which the defendant claimed to have investigated) and was induced to drop his claim for compensation and was prevented from making further inquiry as to his *status* and rights, is admitted.

It further appears admitted in connection with the admissions above noted that the letter of December 9, 1917, was written by the defendant for the fraudulent purpose of concealing from the plaintiff the fact that he was not an adopted son and that he was entitled to compensation and with the fraudulent intention that the plaintiff should rely upon the representations that he was an adopted son and was not entitled to compensation and would not make further inquiry as to his status and rights and would be induced to forego his claim for compensation.

Another admission to be noted in this connection is that there existed a concerted design, plan and scheme on the part of the defendant to cheat and defraud the plaintiff and to obtain his services without compensation, of which the defendant's original representations concerning his adoption by the defendant as his son, his letter of reassurance of December 9, 1917, and his promises to give the wagon and the team and the $1000 to the plaintiff when he reached his twenty-first birthday if he would continue working for him until that time, earlier made, were all parts, and that his representations as to the plaintiff's adoption were for the sole purpose of obviating the necessity of complying with his promises to the plaintiff to give the team and the wagon and the $1000 for services rendered when he should reach the age of twenty-one years and for the purpose of obtaining the plaintiff's services in the future and thereby to cheat and defraud him.

9. That the plaintiff did have confidence in the defendant and did trust in him by reason of the relationship between them is spread all over the record in this case. That he did trust in him is shown by his conduct in working for the defendant from day to day from the time that he was taken into the defendant's home until he was eighteen years of age; that he did trust in him is shown by the fact that he remained with him upon the farm and continued to work for him after he reached the age of eighteen years until he was twenty-one years of age upon the defendant's promise to give him a wagon and team and $1000 in cash when he reached the age of twenty-one years; that he did trust in him, when the defendant told him just before he was twenty-one years of age that he had adopted him and that he was his adopted son and heir and would through such adoption

be legally protected and assured of compensation for his labors on the farm, is shown by the fact that he remained with him after his twenty-first birthday and continued in his work and labor for the defendant without compensation until July 15, 1917, when he was about twenty-three years of age and until he was discharged by the defendant and told to go; that he did trust in him is shown by his reliance upon the letter of December 9, 1917, written by him to the plaintiff, reassuring him of his adoption and stating to him that he was not entitled to claim or recover compensation for his work and labor from the time that he reached the age of eighteen years until the time that he was discharged, in dropping his demand for such work and labor and in not seeking to prosecute it further; that he did trust him and his representations from that time forward, believing them to be true, is shown by the fact that he never thereafter sought to renew his demand for compensation and never thereafter made any investigation of his status and rights until apprised, within ninety days prior to the filing of his original petition herein, of a statement made by the defendant to a third person that he was not an adopted son and, upon an investigation thereupon made, learned that he had not been adopted and for the first time learned that the defendant's statements were false and untrue and that a fraud had been practiced upon him through such statement, when he thereupon promptly brought this suit.

10. The defendant in his brief contends that all fiduciary relations were severed between the plaintiff and the defendant not later than December, 1917. This contention is apparently directed to the relationship, formerly existing and claimed to be severed, of father and son by adoption. However, if such relationship by adoption did not in fact exist between the plaintiff and the defendant, a confidential relationship is nevertheless by the evidence sufficiently shown to have existed between them.

It is not, however, now open to the defendant to contend that the technical relationship of father and son did not exist between him and the plaintiff; and it is not open to him to contend that such relationship was severed not later than December, 1917. He himself is the author of the myth, which must be treated as a fact in this connection, that there was a relationship of father and son by adoption existing between them, which existed in December, 1917, at the time he wrote his letter to the plaintiff in which he reassured him of such relationship and assured him that there was no way in which it could be undone but that it was for his protection and was lasting. By his signature to such letter, he at that time declared himself to be the plaintiff's father by adoption.

It is not now open to him to contend to the contrary. To allow him to do so would be to give him the advantage of his own wrong—that

is, of his wrong and fraud and deceit in allaying the suspicions of the plaintiff for the purpose of preventing investigation by him as to the truthfulness of his statements and as to his actual status and rights. It stands admitted by his demurrer that, by his letter of December 9, 1917, he intended to prevent investigation by the plaintiff of his status and rights, by his reliance upon such letter and the statements made therein as true. The record shows that, from the receipt of the letter forward, the plaintiff did so rely upon the same. [McLain v. Parker, *supra*.] Among such statements as above noted was one to the effect that the relationship existing between them of father and son was lasting and could not be undone and that the plaintiff's adoption by the defendant was for the plaintiff's protection.

The defendant is concluded upon such contention by his letter.

11. Neither is it open to the defendant to contend that the plaintiff should not have relied upon the representations made to him and that he was not diligent in the discovery of the fraud practiced. He argues that the plaintiff could have discovered the fraud practiced upon him by an investigation made in 1917 as well as in 1935; that the same records were open to him at that time as in 1935; and that he has been guilty of laches in making such discovery. However, by his letter of December 9, 1917, written for the purpose of so doing, he lulled the plaintiff into a sense of security as to his adoption and *status* for protection of his rights, which made him feel that no investigation was necessary as to his status and rights or as to the truthfulness of the representations touching the plaintiff's adoption and the lasting character of such adoption. By such letter, he purposely and studiously concealed from the plaintiff that he was not an adopted son and that he was entitled to compensation for his services and purposely hid the fraud which he had practiced upon him. Having thus lulled the plaintiff into a sense of security and having thus allayed his suspicions, if any he had, he cannot now be heard to contend that the plaintiff should have been more diligent in discovering the fraud and cannot now be heard to plead the statute of limitations. [37 C. J., p. 947, sec. 317; 37 C. J., p. 976, sec. 357.]

Having wronged the plaintiff by an admitted fraud and deceit practiced upon him before he reached the age of twenty-one years, he further wronged him by a later fraud and deceit intended and calculated to disarm the plaintiff of suspicion and to prevent an investigation and is not in a position to charge negligence or laches upon the part of the plaintiff in not sooner making investigation. [McLain v. Parker, *supra*.]

12. Furthermore, as said by the Supreme Court of this State in the case of Monmouth College v. Dockery, 241 Mo. 522, l. c. 551, and 552, 145 S. W. 785, l. c. 793, ''Fraud is a very subtle subject; it is

cunningly devised and artfully perpetrated; concealment is in its very essence. The law does not presume fraud; it does not require of one that he should suspect fraud in every transaction.''

13. After the defendant made the representations to the plaintiff that he was his adopted son, the plaintiff appears to have relied fully upon such representation and continued to work for the defendant for two years and over, relying upon such representation as true, and, under the influence of his alleged relationship, accepted as true in all of its details the letter by the defendant to him of December 9, 1917, and relied fully thereon.

14. Besides, the defendant having made such representations to the plaintiff touching his adoption by him and never thereafter having advised him that they were false and untrue and having purposely made them with the intention that the plaintiff should rely thereon, he is not now in a position to complain that the plaintiff relied thereon. [Cantley v. Plattner, 228 Mo. App. 411, l. c. 420, 67 S. W. (2d) 125; Union National Bank v. Hunt, 76 Mo. 439; Cottrill v. Crum, 100 Mo. 397, l. c. 404, 13 S. W. 753; Judd v. Walker, 215 Mo. 312, l. c. 328, 114 S. W. 979; Kerr on Fraud and Mistake, pp. 80, 81; Conroy's, Inc., v. Ratz (Mo. App.), 14 S. W. (2d) 465.]

15. Particular and distinct representations as to his adoption were made by the defendant to the plaintiff in the first instance before he was twenty-one years of age and later, by his letter of December 9, 1917. Such representations were of such character as to induce action by the plaintiff and did induce action by him. The plaintiff had the right to rely and act upon the same. He did not have to look further. [Same authorities last above cited.]

It does not lie in the mouth of the defendant, after the same have been relied and acted upon by the plaintiff, to claim that the plaintiff might by investigation have discovered the falsity of the representations as to his adoption and status and rights as his son and have avoided such representations so that, whether the records finally searched by the plaintiff were open to search by the plaintiff in 1917 or in 1935 or at times between said years or not, he was not required to search such records at any time because of the particular and distinct representations which had been made to him by the defendant as to his adoption. [Same authorities last above cited.]

In Cottrill v. Crum, supra, the court, at page 404 of 100 Mo., quotes approvingly from Kerr on Fraud and Mistake at pages 80 and 81, as follows: ''The doctrine of notice has no application where a distinct representation has been made. A man to whom a particular and distinct representation has been made is entitled to rely on the representation and need not make any further inquiry, although there are circumstances in the case from which an inference inconsistent with the representation might be drawn. . . . No man can com-

plain that another has relied too implicitly on the truth of what he himself stated.''

In that same case, the court quoted from Bigelow, vol. 1, on the Law of Fraud, at page 524 thereof, among other things, the following: ''. . . it is not just that a man who has deceived another should be permitted to say to him, 'You ought not to have believed or trusted me,' or 'You were yourself guilty of negligence.' ''

16. The defendant makes the final suggestion that a fiduciary relationship such as that shown in this case does not extend the ten-year period of limitation of the statute for the discovery of the fraud but applies only to relieve the aggrieved party from the exercise of due diligence to discover the fraud, presumably within the ten years. Such suggestion is not borne out by the authorities cited by him under such head.

Whether such relations serve to extend the ten-year period for discovery, as put by the defendant, or whether they serve to avoid the operation of the statute as to the time limited within which discovery must be made is unimportant. That they do serve to avoid the operation of the statute where the discovery is not made within the time limited by the statute under circumstances such as are shown in this case is the express doctrine of the McLain Case, *supra,* and other cases in which that doctrine is followed or recognized, by which this case must be determined.

17. The doctrine of the case of McLain v. Parker, *supra,* is supported by abundant authority. Thus, it is said in 37 C. J., p. 947, sec. 317: ''. . . failure to employ the necessary means to discover the fraud may be excused when plaintiff was lulled into a sense of security by reason of a relation of trust and confidence. . . .'' In section 357, page 976, of the same treatise, it is said: ''. . . where a person occupying a fiduciary relation fraudulently misrepresents to his *cestui que trust* the state of the law or the legal rights arising out of certain facts, whereby the *cestui que trust* is led to forbear bringing suit, the former cannot afterward plead the statute of limitations in an action against him, where such action is brought by the *cestui que trust* within a reasonable time after discovering his right of action.''

In the case of Vigus v. O'Bannon, 118 Ill. 334, l. c. 346, it is said that the failure to use ordinary diligence to discover fraud ''may be excused, where there exists some relation of trust and confidence, as, principal and agent, attorney and client, *cestui que trust* and trustee, between the party committing the fraud and the party, who is affected by it, rendering it the duty of the former to disclose to the latter the true state of the transaction, and where it appears that it was through confidence in the acts of the party, who committed the fraud, that the other was prevented from discovering it.''

In the case of Monmouth College v. Dockery, *supra*, 1. c. 796 of 145 S. W., the Supreme Court of this State, after quoting from the opinion of Vigus v. O'Bannon, *supra*, the paragraph above noted, said with reference thereto: "That is the law of righteousness and justice; it is the law in Missouri, as well as in Illinois."

In the case of Fisher v. Tuller, 122 Ind. 31, the plaintiff and the defendant's ancestor had been partners. They had a claim against the United States Government which was entrusted to Tuller to collect. He collected it in 1867 and reported to the plaintiff, his partner, that the claim had been rejected and could not be collected. He died in 1873. His estate was fully administered and settled in 1879. The plaintiff did not discover the fraud until 1884 and brought suit thereafter. It was said by the court in the opinion in that case (1. c. 35): "It is true that mere silence is not a concealment within the meaning of the statute. . . . But here there was a positive representation made by a party whose position required of him the utmost good faith, and that misrepresentation was a concealment of the cause of action. Whatever may be the rule when no relation of trust or confidence exists, we are clear that where the relation does exist, as in this case, the bar of the statute cannot avail the party who misleads his partner by representing that a claim cannot be collected when he has, in fact, collected it and appropriated the avails to his own use."

In the case of State ex rel. Bell v. Yates, 231 Mo. 276, 132 S. W. 672, after stating the rule that fraudulent concealment avoiding the running of the Statute of Limitations must go beyond mere silence, that there must be something actually done or said directly intended to prevent discovery, or some trick or artifice to thwart an investigation, the Supreme Court adds, 1. c. 676 of 132 S. W.: "It ought not to be necessary to add that there are limitations to the doctrines announced above, and that they are subject to modification in cases involving a fiduciary relation. [Vigus v. O'Bannon, 118 Ill. 334, 8 N. E. 778; Fisher v. Tuller, 122 Ind. 31, 23 N. E. 523.]"

In the case of Bates v. Preble, 151 U. S. 149, 1. c. 160 and 161, 38 L. Ed. 106, the Supreme Court of the United States said: "On the other hand, if the fraud itself be secret in its nature, and such that its existence cannot be readily ascertained, or if there by fiduciary relations between the parties, there need be no evidence of a fraudulent concealment other than that implied from the transaction itself."

In the case of Bowers v. Boyd (Mo. App.), 105 S. W. (2d) 59, 1. c. 62 and 64, it is said:

". . . We think there is no merit to defendant's contention that a cause of action was not stated. In fact, the defendant does

not seriously contend that a cause of action was not stated, except the contention is made that the petition fails to allege that these two counts were not barred by the statute of limitation, and that the allegations show that they were barred.

"We do not agree with defendant as to these contentions. The petition alleges the confidential relations. . . .

"It has always been held fraudulent for one in a position of confidential relationship with another, to take advantage of such relationship and to make transactions beneficial to himself without disclosing all material facts to the other party. And such failure to disclose material facts under such circumstances constitutes fraud."

In the case of Maupin v. Missouri State Life Insurance Company (Mo. App.), 214 S. W. 398, the plaintiff took out a policy of life insurance with the defendant in 1896. In 1903, the plaintiff was induced by the defendant to exchange his policy for a new one. In 1915, twelve years after having made the exchange, the plaintiff brought suit to rescind the exchange on the ground of fraud and deceit. The Statute of Limitations was interposed as a defense. It was said by Judge ELLISON for this court in that case, l. c. 401: "Finally it is urged by defendant that plaintiff's petition amounts to a statement of an action to rescind, and that it ought not to be allowed because, while the exchange of policies was made in 1903, this action was not instituted until 1915. But the evidence discloses that the plaintiff did not become aware of the fact that defendant was claiming to hold a certificate of loan signed by him until a 'short time' before he brought this action. We think there is nothing in the point as to the matter of time or delay."

In Brown v. Irving-Pitt Mfg. Co., 316 Mo. 1023, 292 S. W. 1023, the doctrine of the McLain Case, *supra,* that, in cases involving fiduciary relations requiring full and accurate disclosures to be made and no advantage to be taken, the Statute of Limitations does not begin to run until the discovery of the fraud, whether such discovery be within or without the period limited by such statute, is clearly recognized. It was found in that case, however, that no fiduciary relationship existed between the parties to that suit.

That the statute does not begin to run in cases involving confidential relationships until the discovery of the fraud, whether within or without the period limited, logically follows appears from what was said by the Supreme Court of this State in Monmouth College v. Dockery, *supra,* although the bar of the five-year statute only was involved in that case.

We have examined the authorities cited by the defendant in support of his contentions to the effect that the plaintiff had not used due diligence and that the Statute of Limitations had run against his

suit and in support of the various other contentions made by him; but the facts in those cases are so different from those presented in this case that they cannot be applied here.

The judgment of the trial court is reversed, and the cause remanded. All concur.