In the Matter of the ESTATE of Sadie B. HITCHCOCK, Deceased.

Flavel P. GIRDNER, Administrator of the Estate of Sadie B. Hitchcock, Deceased, Respondent,

v.

CHILLICOTHE STATE BANK et al., Appellants.

No. 25494.

Missouri Court of Appeals, Kansas City District.

June 5, 1972.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 3, 1972.

Application to Transfer Denied Sept. 11, 1972.

Frith & Pyatt, Robert F. Pyatt, Chillicothe, for appellants.

W. Raleigh Gough, C. R. Rittman, Kansas City, for respondent.

PER CURIAM.*

This action began as a proceeding to discover assets in the probate court of Livingston County, Missouri, initiated by the public administrator, Flavel P. Girdner, as administrator of the estate of Sadie B. Hitchcock, deceased, claiming that three savings accounts in the Chillicothe State Bank belonged to the estate. The proceeding was also against the three children of Sadie B. Hitchcock, deceased: Dorothy Hitchcock Cusick, Earl Hitchcock and Ralph Hitchcock. Later Dorothy Hitchcock Cusick, as executrix of the estate of L. R. Hitchcock, deceased, was brought in as a party defendant.

The probate court found the three bank accounts in question constituted assets of the estate of Sadie B. Hitchcock and gave judgment for her administrator. Dorothy Hitchcock Cusick and the bank appealed to the circuit court where trial without jury resulted in a judgment in favor of the administrator and against appellants as to all three counts.

The three accounts in question may be described and designated for convenience as follows: (1) a savings account originally in the name of L. R. Hitchcock and Mrs. L. R. (Sadie B.) Hitchcock; (2) an account in the name of Sadie B. Hitchcock, Dorothy Hitchcock Cusick, Earl Hitchcock and Ralph Hitchcock, which was opened with the proceeds from a sale of real estate located in Carrollton, Missouri, which had been the home of Mr. and Mrs. L. R. Hitchcock; and (3) an account in the name of Dorothy Hitchcock Cusick labelled "reserve account" which was opened with the proceeds of a sale of government bonds originally issued in the name of L. R. Hitchcock or Sadie B. Hitchcock. These accounts will be referred to as "joint account"; the "real estate account"; and the "reserve account".

L. R. Hitchcock was a veteran of the Spanish-American War and he and his wife were in their 80's at the time in question. Their natural heirs were Earl, Ralph and Dorothy Hitchcock Cusick. Dorothy Hitchcock Cusick was married to John A. Cusick, who was and had been for many years, vice-president of the Chillicothe State Bank. Mr. and Mrs. Hitchcock had lived for many years in a small home which they owned in Carrollton, Missouri. On August 2, 1962, Mr. and Mrs. Hitchcock opened a joint savings account in the Chillicothe State Bank with an initial deposit of $300.00. They both executed a signature card for this account which, among other things, provided that the account was owned by them as joint tenants with right of survivorship and not as tenants in common.

On August 1, 1963, Mr. and Mrs. Hitchcock consulted with their son-in-law, Mr. Cusick, with a view to putting their affairs in order. On this date Mr. Cusick prepared a will for Mr. Hitchcock which left the real estate to the three children, share and share alike, and left everything else to Dorothy. At the same time, Mr. Cusick altered the signature card of their joint savings account. He drew a line through the name "Mrs. L. R. Hitchcock" on the title of the account and drew a line through Mrs. L. R. Hitchcock's signature on the card. He also drew a line through the

* This opinion, adopted Per Curiam, was written by Judge Fred L. Howard but considered and adopted by the Court after his death.

words "or Mrs." on the ledger sheet of this account so that the name of the account on the ledger sheet was changed from "Mr. or Mrs. L. R. Hitchcock" to read "Mr. L. R. Hitchcock". Mr. Hitchcock's will as it pertained to this account read: "I give to my Daughter, Mrs. Dorothy Cusick, all of my cash in my savings account at the Chillicothe State Bank, Chillicothe, Mo.". The will next provided "I give to my Daughter, Mrs. Dorothy Cusick, all of our furniture, personal property and mixed." We interject here that this will was ineffectual to carry out any of the obvious intentions of its maker.

Mr. Cusick was called as a witness by the administrator and was the only witness who testified as to the circumstances surrounding the making of the will and the opening of the various bank accounts. He testified that Mr. and Mrs. Hitchcock were present with him on August 1, 1963; and that the three of them discussed what should be done with their property; and that the will was drawn and the signature and ledger sheet of the joint savings account altered while both Mr. and Mrs. Hitchcock were present. The will was read to Mr. Hitchcock in the presence and hearing of Mrs. Hitchcock and was then executed. Mr. Cusick first testified that these things were done at the direction of Mr. Hitchcock and in the presence of Mrs. Hitchcock. He later testified that these things were done at the direction of both.

In January of 1965, Mr. Hitchcock went to Wadsworth Veterans Hospital where he remained until he died March 1, 1965. At the time Mr. Hitchcock went to the hospital Mrs. Hitchcock left her home in Carrollton and went to stay in the home of her daughter and son-in-law, Mr. and Mrs. Cusick in Chillicothe. Upon the death of Mr. Hitchcock, the real estate in Carrollton was sold by Mrs. Hitchcock and the proceeds of the sale deposited in the "real estate account". Likewise, the government bonds held in the joint names of Mr. and Mrs. Hitchcock were sold by Mrs. Hitchcock and the proceeds deposited in

the "reserve account". Mrs. Hitchcock continued to live in her daughter's home until May 5, 1965, when she was placed in a nursing home in Chillicothe, Missouri, where she stayed until her death. She suffered a stroke in February or March of 1966, and died March 5, 1966.

The two sons testified that their mother had been mentally deficient because of senility for some years but Mr. Cusick, Mrs. Hitchcock's physician and the personnel at the nursing home, all testified that she was mentally competent and understood what was going on until the first part of the year 1966. Since no issue is made on the matter of her competency on this appeal, we do not go into the details of this evidence but content ourselves with stating that we agree with the conclusion of the trial judge that Mrs. Hitchcock "had the mental capacity to understand the consequences of the various transfers and transactions".

There are differing circumstances concerning each of the three accounts in question and we, therefore, detail what we believe to be the significant facts as to each account. Mr. Hitchcock died March 1, 1965. On March 9, 1965, the account which had been initially opened in the name of Mr. and Mrs. Hitchcock was closed and the balance in the account ($5,857.41) was transferred to a new account in the name of Sadie B. Hitchcock and Dorothy Hitchcock Cusick, either or survivor. Mr. Cusick testified that this account was opened at the direction of Sadie B. Hitchcock and that both Mrs. Hitchcock and Dorothy Cusick were present when he opened the account. Mr. Cusick produced the bank records as to this and the other accounts; the ledger sheet shows the account in the name of either or survivor. He also produced a signature card which was marked as Exhibit 4. He testified that this was the signature card for the account. However, Exhibit 4 was not offered in evidence.

Appellants contend that the joint account initially established in the name of

Mr. and Mrs. Hitchcock became the sole property of Mr. Hitchcock when the August 1, 1963, alterations were made on the signature card and ledger sheet. In view of this contention, Mr. Cusick was asked why the balance was transferred to an account in the name of Mrs. Hitchcock and Dorothy Cusick and he answered that it was done because Mrs. Hitchcock wanted it that way.

With the exception of interest accumulations, all deposits made in this account were made prior to the death of Sadie B. Hithcock. However, the account remained undisturbed from the time of Mrs. Hitchcock's death in March of 1966, until December 16, 1966, when the balance ($7,458.-48) was transferred to a certificate of deposit in the name of "Dorothy Cusick, Executrix. of L. R. Hitchcock, Estate".

As to the "real estate account", the home of Mr. and Mrs. Hitchcock in Carrollton, Missouri, was sold by Mrs. Hitchcock immediately after Mr. Hitchcock's death. In answer to interrogatories, Mrs. Cusick answered that she and her husband assisted Mrs. Hitchcock with the sale of the house. Mr. Cusick testified that at his request a bank in Carrollton, Missouri, recommended a local real estate agent and the house was put in his hands for a sale. The sale price was approximately $4,500.00. Mrs. Hitchcock executed the deed and the proceeds of the sale in the amount of $4,238.-80 were placed in what has been called the "real estate account" opened in the Chillicothe State Bank on March 31, 1965. This account was in the name of Sadie B. Hitchcock, Dorothy Hitchcock Cusick, Earl Hitchcock and Ralph Hitchcock, either or survivor. No signature card was executed for this account. Upon inquiry, Mr. Cusick testified that no signature card was necessary. When asked why a signature card was not necessary, he merely reiterated that it was not necessary. Mr. Cusick further testified that no one other than Sadie B. Hitchcock could make withdrawals from this account. This testimony is obviously in the nature of a conclusion.

Mr. Cusick was not asked what formed the basis for this conclusion and it is not explained by his testimony. Notice was not given to either Earl Hitchcock or Ralph Hitchcock as to the creation of this account and they had no knowledge of it until after Mrs. Hitchcock's death. Mr. Cusick testified that this account was established in this manner at the direction of Sadie B. Hitchcock and that this was done by her in an attempt to comply with the wishes of Mr. Hitchcock as expressed in his will.

The "reserve account" was opened with the proceeds of the sale of government bonds. These bonds had been issued during the lifetime of Mr. and Mrs. Hitchcock in the name of "L. R. Hitchcock or Sadie B. Hitchcock". Thus, upon the death of Mr. Hitchcock, they became the property of Mrs. Hitchcock. One of Mr. Cusick's employees at the bank handled the cashing of these bonds for Mrs. Hitchcock and she received the check for the proceeds. Mr. Cusick testified that upon receipt of the proceeds, Mrs. Hitchcock wanted to give the money to her daughter, Dorothy Cusick. He testified that he told Mrs. Hitchcock, "Now, listen. Let's put this into a reserve account, and if you need it, it's yours. If you don't need it, it's Dorothy's." Mrs. Hitchcock agreed to this and accordingly the "reserve account" was opened in the Chillicothe State Bank on May 3, 1965, in the amount of $4,017.00. The bank's ledger sheet for this account was to be in the name of "Dorothy Hitchcock Cusick". It was labelled "Reserve Account". No explanation of the legal or practical significance of this label is contained in the record and none is apparent. Mr. Cusick testified that no signature card was prepared for this account because the bank already had other signature cards for Dorothy Cusick. The ledger sheet shows this as a savings account. No withdrawal was made from this account until after Mrs. Hitchcock's death when Dorothy Cusick withdrew $700.00 to help pay for Mrs. Hitchcock's funeral expenses. Two further withdrawals are shown, one in the amount

of $100.00 on June 3, 1966, and the last in the amount of $20.34 on December 8, 1966. Mr. Cusick could not remember the purposes of these last two withdrawals and nothing else in the record concerns them. At the time of trial, this account remained in the name of Mrs. Cusick.

The original proceedings to discover assets also raised the question concerning a checking acount in the joint names of Mrs. Hitchcock and Mrs. Cusick. The evidence in the record discloses that the money in this account came from the pension checks of Mrs. Hitchcock and that it was used to pay her current living expenses. Mrs. Hitchcock wrote some of the checks and Dorothy Cusick wrote the large majority thereof. At the time of Mrs. Hitchcock's death, the account had a balance of less than $5.00. It appears the parties have tacitly agreed to forget about this account. It is not mentioned in the judgment appealed from.

■ On this review of a court-tried case, we make our own findings of fact, giving due deference to the opportunity of the trial court to observe the witnesses and evaluate their credibility. Sharp v. Interstate Motor Freight System, Mo., 442 S.W.2d 939.

As to the joint acount, the trial court found that Mrs. Hitchcock did not agree to the deletion of her name therefrom and did not legally relinquish her interests therein. While we believe that this could have been accomplished by her explicit direction to Mr. Cusick, who would then act as her agent, Dalton v. American National Bank, Mo., 309 S.W.2d 571, the evidence in this case is equivocal on this point.

■ Mr. Cusick first testified that the alteration on the records as to this account were made at the direction of Mr. Hitchcock alone. He later testified that Mrs. Hitchcock joined in these directions. Under these circumstances, we concur in the finding of the trial court that this remains a joint account between Mr. and Mrs. Hitchcock and that on the death of Mr. Hitchcock it became the sole property of Mrs. Hitchcock. However, we cannot agree with the subsequent findings of the trial court culminating in his conclusion that the public administrator was entitled to the proceeds of this account as the administrator of Sadie B. Hitchcock. The only evidence in the record is that the proceeds of this account were transferred to the joint account in the names of Mrs. Hitchcock and Dorothy Cusick, either or survivor. The ledger sheet shows this status and upon interrogation of the attorney for the administrator Mr. Cusick testified that there was a signature card prepared for this account. This signature card was in court and marked as an exhibit. However, it was not formally offered and received in evidence. The attorney for the administrator specifically declined to offer it in evidence and the attorney for appellant neglected to do so. However, from this evidence, only one conclusion is possible and that is that a signature card between Dorothy Cusick and Mrs. Hitchcock was, in fact, executed. Such signature card would without doubt create a joint account with right of survivorship as is indicated by the ledger sheet. Section 362.470, V.A.M.S. relating to joint deposits in banks, provides in effect that when a deposit is made in the name of the depositor and another person and "in form to be paid to either, or the survivor of them", the deposit and any additions to it shall become the property of the persons as joint tenants and may be paid to either during the life of both, or to the survivor after the death of one of them. This section gives rise to a presumption that a deposit made within its purview becomes the property of the persons named as joint tenants and, in the absence of competent evidence to the contrary, actually fixes the ownership of the fund in the persons named as joint tenants with the right of survivorship. Jenkins v. Meyer, Mo., 380 S.W.2d 315, 320 [4]; In re Patterson's Estate, Mo., 348 S.W.2d 6, 10 [3]. The creation of the joint account was the present gift " 'of a

partial interest in the form of a right to withdraw and the right of survivorship'". Melton v. Ensley, Mo.App., 421 S.W.2d 44, 55 [21]. We, therefore, find that a valid joint account was created and that upon the death of Mrs. Hitchcock the funds in the account became the sole property of Dorothy Cusick.

In response to the petition to discover assets, Dorothy Cusick and the bank both filed answers denying that the administrator had any interest in this account. It was not until some months later on December 16, 1966, that this account was closed out and the proceeds transferred to a certificate of deposit in the name of Dorothy Cusick as executrix of her father's estate. After such transfer, the interrogatories of the administrator were served and at that time, Dorothy Cusick disclaimed interest in the proceeds of the account stating that they were held by her as executrix and when Dorothy Cusick, as executrix, was brought in as a party defendant in the proceeding approximately a year after its institution, she claimed the proceeds of this account as executrix. In view of our above conclusion, Mrs. Cusick as executrix could only hold as a transferee from Dorothy Cusick as an individual. The evidence is inescapable that at the significant date in this proceeding (the date of Sadie B. Hitchcock's death), these funds became the sole property of Dorothy Cusick.

The administrator contends that because Dorothy Cusick as executrix did not file a separate notice of appeal that the judgment of the trial court awarding the proceeds of this account to the administrator cannot be disturbed. This does not follow. The evidence reveals that the administrator had no claim to these funds and Dorothy Cusick, as an individual, had standing to contest his claims, both in her own behalf and in the behalf of her later transferee, the executrix of her father's estate. Accordingly, we hold that the judgment of the trial court insofar as it allows the administrator to recover the proceeds of this "joint account" must be reversed.

As to the "real estate account" it is without question that the real estate was owned by Mr. and Mrs. Hitchcock as an estate by the entirety. On the death of Mr. Hitchcock the real estate became the sole property of Mrs. Hitchcock. She had full power to dispose of the real estate and did so and the proceeds of this sale became her sole property. She then directed that it be placed in an account in her name and the names of her three children. The sole evidence by which we can determine her intention as to this matter is the testimony of Mr. Cusick. Such testimony is extremely unsatisfactory. He was apparently acting at the direction of Mrs. Hitchcock and he carefully refrained from complying with the statutory formalities which would have created a joint account with the right of survivorship. Section 362.470 V.A.M.S. Accordingly, neither a statutory presumption of joint tenancy arose, nor, because the facts do not support an intention in Mrs. Hitchcock to dispose of her present interest in this account, was a valid gift inter vivos shown. In re Simm's Estate, Mo., 423 S.W.2d 758, 762 [2]. It therefore follows that the "real estate account" remained her sole property and constituted an asset of her estate upon her death. We conclude that the judgment of the trial court awarding the proceeds of this account to the administrator is correct and should be affirmed.

As to the "reserve account" these funds came from the government bonds jointly owned by Mr. and Mrs. Hitchcock. The bonds became the sole property of Mrs. Hitchcock upon Mr. Hitchcock's death. She cashed these bonds with the aid of the employees at the bank and the evidence demonstrates that she had a present intention to make a gift of these funds. Mr. Cusick testified that he suggested the funds should be held intact in case of need by Mrs. Hitchcock. However, the evidence demonstrates the funds were, in fact, transferred to Dorothy Cusick. The agreement between Dorothy Cusick and her mother

as suggested by Mr. Cusick, cannot defeat the fact that all actions necessary to a present gift inter vivos were taken by Mrs. Hitchcock. Wantuck v. United Savings and Loan Assn., Mo., 461 S.W.2d 692. Mrs. Hitchcock intended to make a present gift of the "reserve account" to Mrs. Cusick, delivered the property to her, and Mrs. Cusick accepted the ownership which took effect immediately and absolutely. In re Simm's Estate, Mo., 423 S.W.2d 758, 762 [2]. We, therefore, conclude that the funds in this account became the sole property of Mrs. Cusick and that the administrator has no valid claim on them. We do not consider that the fact that this account was labelled "reserve account" has any legal significance. It merely reflects a personal agreement between Dorothy Cusick and her mother as to what she would do with the funds given her by the mother. It, in no way, indicates any legal impairment of her rights to the money. As to the "joint account" and the "reserve account" we hold that Mrs. Hitchcock did, in fact, make a valid inter vivos gift to take effect at the time; that they were not intended as a testamentary disposition and upon Mrs. Hitchcock's death, the funds became the sole property of Mrs. Cusick and the administrator of Mrs. Hitchcock's estate has no interest therein.

The administrator contends that Mr. and Mrs. Cusick stood in a position of confidence to Mrs. Hitchcock and that, therefore, the burden was upon them to establish the fairness and validity of the claimed gift, free from any undue influence, citing, among other cases, Clark v. Powell, 351 Mo. 1121, 175 S.W.2d 842, 846 [1]; In re Patterson's Estate, Mo., 348 S.W.2d 6, 10 [5]. We believe the facts fully establish the subsistence of such a relation, not only between the Cusicks and Mrs. Hitchcock, but Mr. Hitchcock, as well. Selle v. Wrigley, 233 Mo.App. 43, 116 S.W.2d 217; In re Barcikowski's Estate, Mo., 480 S.W.2d 877. We also believe that the transactions between the Cusicks and the Hitchcocks were free of the taint of covinous influence and that the presumption of undue influence has been fully overcome. While we have refused to give effect to the attempted deletion of Mrs. Hitchcock's name and signature from the records of the original joint account because done by Mr. Cusick without her consent, we found no purpose to deceive. Mr. Cusick's innocent design was to give effect, in his untutored way, to the will he had written for Mr. Hitchcock in whose purpose Mrs. Hitchcock concurred. There was no evidence at all that the Cusicks ever exercised any undue influence over the Hitchcocks or, more decisively, that such an influence was operative at the time of any of the transfers involved. Flynn v. Union National Bank, Mo.App., 378 S.W.2d 1, 10 [3]. On the contrary, what little evidence there is all indicates a proper solicitude by the daughter and her husband for her aged mother and a readiness to carry out her wishes. It, therefore, follows, that the judgment of the trial court as to the proceeds of the "joint account" and "reserve account" should be and is hereby reversed; the judgment of the trial court awarding the administrator the proceeds of the "real estate account" is affirmed.

All concur.

PRITCHARD, SWOFFORD and WASSERSTROM, JJ., not participating because not members of the court when cause was submitted.